**UNITED STATES of America,
Plaintiff,**

v.

**SCHOOL DISTRICT OF FERNDALE,
MICHIGAN, et al., Defendants.**

**Civ. A. No. 75–70958.**

United States District Court,
E. D. Michigan, S. D.

Aug. 28, 1975.

Secretary Richardson was asked by Congressman O'Hara during the House Education and Labor committee hearings whether, even if a school system was not in violation of the equal educational opportunity provision of that bill—which are essentially those that were enacted in 1974—whether "it would still be possible for courts to find that such a neighborhood school system did constitute a denial of equal protection and to enter orders of the sort described . . . ?" Secretary Richardson responded in the affirmative. Hearings before the House Educ. & Labor Comm. on H.R. 13915, 92d Cong.2d Sess., at 164.

Edward H. Levi, Atty. Gen., J. Stanley Pottinger, Asst. Atty. Gen., Alexander C. Ross, Thomas M. Keeling, J. Gerald Hebert, Attys., U. S. Dept. of Justice, Washington, D. C., and Ralph B. Guy, U. S. Atty., E. D. Mich., Detroit, Mich., for plaintiff.

Burton R. Shifman, Philip J. Goodman, Southfield, Mich., for Ferndale School Dist.

Frank J. Kelley, Atty. Gen., and Thomas F. Schimpf, Asst. Atty. Gen., Lansing, Mich., for State defendants.

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENNEDY, District Judge.

Plaintiff United States of America has moved for Partial Summary Judgment in this school desegregation case.[1] The Court has indicated in another opinion and order, filed August 28, 1975, 400 F.Supp. 1131, that the present complaint will be dismissed if an amended complaint is not filed within ten (10) days. However, because the defects in the complaint are such that they can be readily cured by an amendment, the Court believes that a ruling on the United States' motion at this time will expedite the disposition of this action.

Plaintiff recognizes that summary judgment is not usually appropriate in a case such as this where there is dispute as to the facts and where the intent of

---

1. The Motion for Summary Judgment relates only to Count I of the amended complaint which alleges violations of the Equal Educational Opportunity Act of 1974. 20 U.S.C. § 1701, *et seq.* Count II charges various state defendants with having made impermissible use of federal funds given to the state under 31 U.S.C. § 1221 *et seq.* (Revenue Sharing Act).

the defendants is of critical importance.[2] See *Soria v. Oxnard School District,* 488 F.2d 579, 588 (9th Cir. 1973). Cf. *White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). However, the United States claims that this case presents an exception because there has been an administrative proceeding which it argues considered and decided a number of critical issues underlying this case. It is the position of plaintiff that the Ferndale School Board[3] is precluded by the doctrine of collateral estoppel from relitigating the issues determined in this earlier Department of Health, Education and Welfare proceeding, and that the HEW decision, plus the pleadings and stipulations of the parties filed in this action, permit the Court to grant partial summary judgment for plaintiff on the questions of whether the defendant has violated the Equal Educational Opportunity Act of 1974, 20 U.S.C. § 1701 *et seq.,* and whether certain measures recently taken by the school district remedy the alleged violations. In the same motion the plaintiff requests a preliminary injunction directing the defendant to develop and implement a constitutionally adequate desegregation plan. The effect of this order on that request is discussed later in this opinion.

An understanding of the nature and chronology of the HEW proceedings is necessary to a discussion of the issues raised by plaintiff's motion. On September 25, 1968, HEW notified the defendant school district of alleged concentrations of minority students in certain schools. HEW indicated that as a result of these conditions, Ferndale was not in compliance with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* No voluntary resolution of the dispute was achieved and an administrative hearing was arranged. Hearings were held over several days from July 1969 through April 1970. On September 28, 1970, the HEW hearing examiner ruled, in essence, that the Grant Elementary School in the Royal Oak Township portion of the Ferndale School District was built, maintained and operated with the intent to and effect of segregating the black elementary school students in the district. He also found racial discrimination in the assignment of black faculty members among the elementary schools of the district. The decision of the hearing examiner was reviewed by the HEW Reviewing Authority (Civil Rights). This body modified the decision in a number of respects but essentially confirmed the finding of *de jure* segregation of the elementary schools in Ferndale. The principal opinion concluded:

> [the facts] . . . all lead to a reasonable conclusion that the Respondent has purposefully maintained the Grant School as a segregated unit. Consequently, it cannot be said that the present racial identity of Grant as an all-black school is fortuitous or adventitious. The existence of a purpose to segregate constitutes an intent to segregate, and the resultant segregation becomes and is *de jure* segregation, for which the Respondent has the affirmative and positive duty to correct *post-haste.*

Ruling on Exceptions and Order of the Reviewing Authority (Civil Rights) at

---

2. The basic elements of the claimed discrimination are set out in paragraph 9 of the amended complaint:

 The defendant school district and local school officials built and have continued to operate and maintain the U. S. Grant Elementary School in the School District of the City of Ferndale for the purpose and with the effect of segregating black elementary students in the school system and have discriminatorily assigned black facul-

 ty and staff to the Grant School on the basis of race.

3. The United States also claims that the same estoppel applies to the state defendants. However, the Court has dismissed Count I as against them. In any event, the analysis of the applicability of collateral estoppel would be the same with regard to the state defendants as it is regarding the School District.

20 (emphasis original) (opinion of members Morse and Ferman).

The Ferndale School District sought review of the final HEW decision in the United States Court of Appeals for the Sixth Circuit. The Court of Appeals on March 1, 1973, ruled without opinion that the order of the Department of HEW was supported by substantial evidence. *School District of City of Ferndale, Michigan v. HEW*, 474 F.2d 1349 (6th Cir. 1973). Ferndale petitioned the United States Supreme Court for certiorari, and on October 9, 1973, the petition was denied. 414 U.S. 824, 94 S.Ct. 126, 38 L.Ed.2d 57 (1973).

As a result of these proceedings, federal financial assistance to Ferndale schools was terminated as provided in 42 U.S.C. § 2000d–1(1).

As noted above, the plaintiff seeks to have the Court hold that collateral estoppel precludes relitigation of the determinations made by HEW. Because the Court does not believe that the doctrine of collateral estoppel should be applied in this situation, the Motion for Summary Judgment must be denied.

The basic principle of the doctrine of collateral estoppel is that the determination of issues in a prior action is conclusive as to those issues in subsequent litigation between those parties, even though a different claim is involved. Section 68 of the Restatement of Judgments states:

(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . . . .

It is clear that collateral estoppel effect is given not only to final judgments of courts, but also, under certain circumstances, to the final decisions of administrative agencies. See *United States v. Utah Construction Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966):

When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. [citations omitted]

See, e. g., *United States v. Willard Tablet Co.*, 141 F.2d 141 (7th Cir. 1944) (final determination by the Federal Trade Commission that a manufacturer's representation regarding the effectiveness of a drug were not false, given collateral estoppel effect in an action to condemn a quantity of the drug on the ground that the representations were inaccurate); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) (finding by a commission that plaintiff's coal was bituminous, given collateral estoppel effect in an action between federal tax officials and the coal company regarding application of tax on bituminous coal).

However, the doctrine is applied more selectively when an administrative finding is involved. *Grose v. Cohen*, 406 F.2d 823, 924–25 (4th Cir. 1969). See generally, Davis, *Administrative Law Treatise* §§ 18.02, 18.03, 18.12 (1958). As Professor Davis states:

The problem in administrative law is to develop a set of rules that are especially designed for the special problems resulting from the differences between the judicial and the administrative processes. The starting point is usually the traditional doctrine as applied to judgments of courts; that doctrine should be qualified or relaxed to whatever extent is desirable for making it a proper and useful tool for administrative justice.

Davis, *supra*, § 18.03, at 559.

The general requisites for the application of collateral estoppel have been stated as follows:

whether the issue sought to be concluded is the same as that involved in the prior action; was litigated in the

prior action; was in fact judicially determined in the prior action; and whether the judgment in the prior action was dependent upon the determination made of that issue.

1B Moore's *Federal Practice* ¶ 0.443, at 3902.

The requirement that the finding on the issue involved be material or "necessary" to the prior judgment is included because of the danger that the parties may not have fully litigated the issues that would not have affected the outcome of that proceeding. See *The Evergreens v. Nunan*, 141 F.2d 927, 929 (2d Cir. 1944).

■ In addition, and particularly when it is the decision of an administrative agency that is involved, there is an additional requirement—that the parties have had an adequate opportunity to litigate the issue. *United States v. Utah Construction Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

The findings of the Department of HEW in the administrative proceeding in question here fail in several respects to satisfy the requirements for the application of the doctrine of collateral estoppel.

■■ First, there is substantial uncertainty as to whether certain findings were material to the HEW determination regarding the Ferndale schools' eligibility for federal financial assistance. It should be noted that when a reviewing court or agency modifies the basis of a decision, it is the appellate body's decision that governs for purposes of possible collateral estoppel effect. See generally 1B Moore's *Federal Practice* ¶ 0.-416[2]. In the HEW proceedings, the Reviewing Authority modified a number of the Hearing Examiner's findings. In addition, two of the four members of the Reviewing Authority wrote a "Specially Concurring Opinion". This latter opinion creates substantial doubt as to whether a critical finding, that is, one which plaintiff must establish in the instant suit, was necessary to the adminis-

trative determination. The two concurring members indicated that they felt it was unnecessary to decide certain questions of motive and intent. They stated:

> The writers of this portion of the opinion are of the impression that it is unnecessary to a decision to ascertain the motive and intent of the Respondent School Board in 1925–1926. Generally, such an endeavor is an exercise in futility, and especially, where, as in this case, it is unnecessary in order to reach a decision . . . .

Ruling on Exceptions and Order of Reviewing Authority (Civil Rights) at 22.

The specially concurring opinion maintains that by executing certain assurances pursuant to the application for federal funds, the school district undertook certain obligations to remedy discrimination, obligations that may not have been present before the federal funds were sought. These two members believed that the violation of these assurances was the basis on which the funds should be terminated.

The opinion later states:

> The writers of this concurring opinion, having considered the difficulties of ascertaining past motives and intent, and having expressed the opinion that such determination is unnecessary to this decision, agree that the total record of this proceeding is such that it enables the Reviewing Authority to affirm the initial decision and to make such rulings as two of our brethren felt compelled to do.

Ruling on Exceptions and Order of the Reviewing Authority (Civil Rights) at 23.

The language of this opinion, representing the view of one-half of the Reviewing Authority seems to indicate that a finding of intent and purpose to discriminate, which plaintiff concedes is necessary to find a violation of the EEOA, may not have been necessary in an administrative proceeding to termi-

nate federal financial assistance under Title VI of the Civil Rights Act of 1964.

■ Plaintiff insists that the standard to be used under the EEOA is identical to the Title VI test. However, if the Reviewing Authority, even wrongly, proceeded on another assumption, then that body's findings would not qualify for collateral estoppel treatment.

A second difficulty in applying a collateral estoppel on this motion is the uncertainty regarding whether the HEW proceeding decided the issues that are raised in this suit. This problem arises from the fact that the two proceedings were under different statutes. The administrative action was brought under 42 U.S.C. § 2000d. That section provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

This suit is brought under 20 U.S.C. § 1701 *et seq.*, the relevant prohibitions are found in section 1703:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—
>
> (a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools;
>
> (b) the failure of an educational agency which has formerly practiced such deliberate segregation to take affirmative steps, consistent with subpart 4 of this title, to remove the vestiges of a dual school system;
>
> (c) the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin among the schools of such agency than would result if such student were assigned to the school closest to his or her place of residence within the school district of such agency providing the appropriate grade level and type of education for such student;
>
> (d) discrimination by an educational agency on the basis of race, color, or national origin in the employment, employment conditions, or assignment to schools of its faculty or staff, except to fulfill the purposes of subsection (f) below;
>
> (e) the transfer by an educational agency, whether voluntary or otherwise, of a student from one school to another if the purpose and effect of such transfer is to increase segregation of students on the basis of race, color, or national origin among the schools of such agency; or
>
> (f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

Plaintiff argues that the standards under the two statutes are identical. Such a conclusion is not self-evident from the face of the statutes, and the Court is reluctant to so conclude in the absence of any construction by the EEOA by the appellate courts, or, indeed, in the published opinion of any court. The Court believes that there is substantial doubt that the proscriptions of the two statutes are the same. As noted above, two of the members of the Reviewing Authority felt Section 2000d was broader. In its opinion and order of August 28, 1975, 400 F.Supp. 1135 granting the State defendants' motion to dismiss the Court noted that the legislative history of the EEOA indicated a

narrower scope of proscriptions than did the Fourteenth Amendment as applied in other school desegregation cases.[4]

There are also a number of cases which indicate that caution should be used in giving collateral estoppel effect to decision under one statute in actions under another. *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125 (6th Cir. 1971) was an action brought under Title VII of the Civil Rights Act of 1964. Plaintiff claimed that he was discharged from his employment because of his race. In an earlier NLRB proceeding, a hearing examiner had determined that the employee was discharged for cause, rather than for union activities. The Court refused to give collateral estoppel effect to this finding as to the reason for plaintiff's discharge. The Court explained:

> Absent a special consideration, a determination arising solely under one statute should not automatically be binding when a similar question arises under another statute. [citations

omitted] This is because the purposes, requirements, perspective and configuration of different statutes ordinarily vary. . . .

> As a result of the variant standards of these statutes, the NLRB hearing did not adequately consider the factors necessary for a Title VII violation. . . . Considering the differences in these acts it would be anomalous if a finding under one should preclude a determination under the other, absent special considerations.

443 F.2d at 128–29.

The differences between the NLRA and Title VII may be more gross than those between the EEOA and Title VI, but the danger recognized by the Sixth Circuit in *Tipler* is present nonetheless.

A similar case is *Pacific Seafarers, Inc. v. Pacific Far East Line, Inc.*, 131 U.S.App.D.C. 226, 404 F.2d 804 (1968). That was an action under the Sherman Act. In a prior proceeding the Federal

---

4. The United States argues that the rights guaranteed by the EEOA and the Fourteenth Amendment are coextensive, relying on 20 U.S.C. 1702(b): "the provisions of this title are not intended to modify or diminish the authority of the courts of the United States to enforce fully the fifth and fourteenth amendments to the constitution of the United States." In addition, the United States also cites legislative history indicating the same conclusion. See Brief in Support of Motion for Summary Judgment and Preliminary Injunction, at 27. However, it is a *non sequitur* to say that because a statute does not purport to reduce the power of the courts under other laws that the statute encompasses all of that law.

The Court is of the opinion that the legislative history indicates a distinction between the guarantees of the Fourteenth Amendment and the provisions of this Act.

As the Court noted in its opinion and order of July 3, 1975, there is little legislative history of the EEOA because it was offered from the floor of each house as an amendment to the *Education Amendments of 1974*. Therefore, there are no committee hearings or reports on the measure during that session. However, the amendments proposed on the floor were essentially the same as the comparable provisions of the proposed

Equal Educational Opportunity Act of 1972, H.R. 13915, 92d Cong., which passed the House but not the Senate in 1972.

There were hearings, committee reports and debates on that measure during 1972. The Court believes, as the United States argued in response to the defendants' first motions to dismiss, that it is appropriate to consider the legislative history of H.R. 13915 in interpreting the 1974 Act.

The 1972 bill was an administration proposal. Secretary of Health, Education and Welfare Richardson's explanation explicitly contemplated that individuals could challenge as discriminatory, school district actions that were not proscribed by the Act.

Secretary Richardson was asked by Congressman O'Hara during the House Education and Labor Committee hearings whether, even if a school system was not in violation of the equal educational opportunity provision of that bill—which are essentially those that were enacted in 1974—whether "it would still be possible for courts to find that such a neighborhood school system did constitute a denial of equal protection and to enter orders of the sort described . . . ?" Secretary Richardson responded in the affirmative. Hearings before the House Educ. & Labor Comm. on H.R. 13915, 92d Cong.2d Sess., at 164.

Maritime Commission had concluded that the transportation services being provided did not fall within "foreign commerce" as that term is used in the Shipping Act. Defendants asked the court to apply collateral estoppel to find that there was no "foreign commerce" under the Sherman Act. The D.C. Circuit said:

> The Commission did not rule that there was no "foreign commerce" as that term is used in the Sherman Act, nor did it rule that the standards under the two acts were the same. It is commonplace in the law to encounter instances of the same words being given different scope in different contexts.

The Court concluded that collateral estoppel should not be used because "foreign commerce" under the Shipping Act was narrower than that term in the Sherman Act.

■ In the present case, there is reason to believe that the proscriptions of the EEOA are narrower in scope than the Fourteenth Amendment protections that are apparently encompassed in Title VI. It seems clear the HEW found that Title VI had been violated, but it is not possible to say with the same assurance that the particular violations relied upon fall within the reach of 20 U.S.C. § 1703. This, obviously, is a question that would have been irrelevant to the HEW determination, and, indeed, it would not have been capable of investigation at the time of that hearing, several years before the EEOA was passed.

The fundamental difference between these statutes suggests another reason for not viewing a finding under Title VI as determinative of the issues in this case. Title VI remedies are the termination of federal assistance to school districts or other institutions that discriminate. It is natural to suppose that Congress wanted a quick and efficient way to terminate such aid to assure that United States funds would not aid a discriminatory program. See *United States v. Jefferson County Board of Education,* 372 F.2d 836, 856 (5th Cir. 1966).

■ The Equal Educational Opportunity Act, on the other hand, contemplates injunctions requiring potentially drastic revisions in school systems. Given this fact and the detailed attention given in the Act to the role of the federal courts, it is reasonable to conclude that Congress intended that the courts be the forum for resolving disputes regarding alleged denials of equal educational opportunity. Cf. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 56, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

■ The final major aspect of the investigation of the appropriateness of collateral estoppel relates to the adequacy of the opportunity to litigate the issues.[5] Defendant objects on many

---

5. Some indication of the factors that should be considered can be found in the Supreme Court's treatment of an analogous problem in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The issue in that case was whether an employee could bring an action under Title VII of the Civil Rights Act of 1964, despite his prior resort to an arbitration procedure provided by a collective bargaining agreement, which resulted in a determination adverse to the employee. While the Court held that the action was not barred by the arbitrator's decision, it indicated that the decision could be used as evidence in the Title VII action.

In its discussion of the weight to be accorded this evidence, the Court stated:

> We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors included: the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators.

415 U.S. at 60, 94 S.Ct. at 1025.

grounds to the procedures used by the hearing examiner and Reviewing Authority. In almost any situation where a court is asked to apply collateral estoppel, the procedures will have been different in the prior action, at least to some degree. This does not necessarily make collateral estoppel inappropriate. However, at some point the proceedings may have departed so far the practices that would be acceptable in the second court that the decision of the prior proceeding will not be conclusive. This is a danger which is more likely to be found when the earlier decision was by an agency, since the procedures used by administrative bodies are in general less formalized than are those provided by judicial rules.

Several features of the HEW proceedings, when viewed as a whole, are sufficient to make collateral estoppel inappropriate.

The first such factor concerns the conduct of the hearings before the hearing examiner. While defendant complains about the rules of evidence applied, it does not appear that defendant was greatly prejudiced thereby.[6]

More disturbing is the unavailability of subpoena power in the HEW proceeding. The parties agree, and as far as the Court can determine from examination of the relevant statutes, HEW hearing examiners do not have the authority to issue subpoenas. The Court regards this as a serious defect in an administrative hearing to which it is sought to give collateral effect. The availability of the subpoena power is an important aspect of the judicial system. Many Federal agencies charged with the conduct of important administrative investigations are given the power to compel the attendance of witnesses. See, e. g., 47 U.S.C. § 409 (Federal Communications Commission); 15 U.S.C. § 49 (Federal Trade Commission); 49 U.S.C. § 17(3) (Interstate Commerce Commission); 29 U.S.C. § 161 (National Labor Relations Board); 15 U.S.C. § 78u (Securities and Exchange Commission).

It is true that defendant does not indicate any specific information or witnesses that it would have sought to have produced if it had been in a position to use an agency subpoena. This weakens to some degree the force of this objection to the administrative action. However, whether a given HEW determination should be given collateral estoppel effect should not turn on whether a particular litigant can demonstrate specific prejudice. This is not an inquiry into whether the HEW findings should be sustained or overturned in which the question of whether prejudice resulted might be determinative. The issue is, rather, whether the nature of those proceedings was such that it can be said that there was adequate opportunity to litigate the issues. *United States v. Utah Construction Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

A second factor which weakens the argument for the use of collateral estoppel is the manner in which the persons who made the HEW determinations were selected. It appears that the Hearing Examiners for Title VII proceedings are selected in the same manner as are those for other HEW proceedings. See 45 C.F.R. § 81.61

The members of the Reviewing Authority, however, are appointed by the Secretary of Health, Education and Welfare. While plaintiff represents to the Court that all members are selected from outside HEW, there does not appear to

---

**6.** However, this fact should weigh against the application of collateral estoppel, given the requirement imposed by Congress in 20 U.S.C. § 1753 that "The rules of evidence required to prove that State or local authorities are practicing racial discrimination in assigning students to public schools shall be uniform throughout the United States."

be any published policy or procedure which requires that this be so.[7]

There is no formalized procedure for their appointment or confirmation. See generally 32 Fed.Reg. 14555, 15190–91 (1967); 34 Fed.Reg. 7390 (1969). Essentially, the Secretary may select whomever he likes. There is no reason to believe that those that have been selected have not been of the highest ability and integrity. However, the complete discretion of the agency head in selecting the members of the Reviewing Authority—which authored the findings that are determinative on many points—is a factor which the Court should consider in making its decision on the collateral estoppel issue.

This feature of the Board's selection is compounded by the posture of the present action. This is an action brought by the United States, which seeks to rely on a determination made by a federal agency which was reviewed by the judiciary only under the "substantial evidence" test. See *School District of City of Ferndale, Michigan v. HEW*, 474 F.2d 1349 (6th Cir. 1973).

Most of the cases which have applied collateral estoppel to the findings of administrative agencies have done so either against the United States, e. g., *United States v. Willard Tablet Co.*, 141 F.2d 141 (7th Cir. 1944), or because of an explicit congressional expression of intent to proceed in that fashion; that is, with an initial agency determination which is given effect in a later suit. E. g., *Sunshine Anthracite Coal Co. v. Ad-*

*kins*, 310 U.S. 381, 60 S.Ct. 907, 84 L. Ed. 1263 (1940). Other cases which appear to be examples of collateral estoppel or *res judicata* in favor of the government are cases in which Congress has, in effect, provided that a separate action shall act as the appeal of an agency determination, e. g., *United States v. Utah Construction Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), or cases in which a court is merely refusing to permit collateral attack of an agency decision. E. g., *CIBA Corporation v. Weinberger*, 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973).

In light of the need for considerable caution in applying collateral estoppel to administrative decisions, particularly when it is the United States that seeks to bar relitigation of a decision by one of its agencies, the deficiencies in these HEW proceedings, together with the substantial doubt as to whether the requisite identity and materiality of issues is present, precludes the application of collateral estoppel here.[8]

Because in the absence of the adoption of the HEW findings there is an insufficient record for the Court to conclude that there is no dispute as to material facts, plaintiff's Motion for Summary Judgment must be denied.

The Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the termination of this litigation.

---

7. Presumably, the selection is subject to the requirements of the Administrative Procedure Act. 5 U.S.C. § 554(d).

8. This result does not mean that the record and/or findings in the HEW proceedings cannot be used for some purposes in this litigation, perhaps as evidence in a hearing on

the motion for a preliminary injunction or at the trial of the case. Cf. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974); *Smith v. Universal Services, Inc.*, 454 F.2d 154 (5th Cir. 1972); *Heard v. Mueller Co.*, 464 F.2d 190 (6th Cir. 1972).