**UNITED STATES of America, Plaintiff,**

v.

**SCHOOL DISTRICT OF FERNDALE, MICHIGAN, et al., Defendants.**

**Civ. A. No. 75–70958.**

United States District Court,
E. D. Michigan, S. D.

Aug. 28, 1975.

---

**1136**

See also, D.C., 400 F.Supp. 1122, D.C., 400 F.Supp. 1131, and D.C., 400 F. Supp. 1141.

Edward H. Levi, Atty. Gen., J. Stanley Pottinger, Asst. Atty. Gen., Alexander C. Ross, Thomas M. Keeling, J. Gerald Hebert, Attys., U. S. Dept. of Justice, Washington, D. C., and Ralph B. Guy, U. S. Atty., E. D. Mich., Detroit Mich., for plaintiff.

Burton R. Shifman and Philip J. Goodman, Southfield, Mich., for Ferndale School Dist.

Frank J. Kelley, Atty. Gen., and Thomas F. Schimpf, Asst. Atty. Gen., Lansing, Mich., for State defendants.

## OPINION AND ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS COUNT I

KENNEDY, District Judge.

This action was commenced by the United States on May 22, 1975, alleging that the public elementary schools of the School District of Ferndale, Michigan, were operated in a racially discriminatory manner in violation of the Equal Educational Opportunity Act of 1974 (EEOA), 20 U.S.C. § 1701 *et seq.*, and the Fourteenth Amendment, and that the State of Michigan had violated the provisions of 31 U.S.C. § 1221 *et seq.* (Revenue Sharing Act) by its use of revenue sharing funds to aid the Ferndale schools.

The defendants filed motions to dismiss the allegations regarding racial discrimination, and on July 3, 1975, 400 F. Supp. 1122, in a written opinion, the Court granted these motions in part. The United States was permitted to amend its complaint with regard to the remaining violations of the EEOA. The allegations regarding revenue sharing were not affected by the Court's order.

On July 14, 1975, an amended complaint was filed which consisted of two counts; the first regarding racial discrimination in the operation of the elementary schools in the Ferndale district and the second regarding the allegations of misuse of revenue sharing funds by the State.

The various State defendants[1] have moved to dismiss Count I as against them. They claim that the complaint does not allege violations by the State defendants of the EEOA and that the Attorney General lacks standing to raise Fourteenth Amendment claims of other persons in this action.

■ Although the original complaint did not appear to charge the State defendants with violations of the EEOA, the amended complaint apparently does. Paragraph 18 of the amended complaint states:

> The actions and inactions of the defendants, as described in paragraphs 9 and 12 through 17 above, deny equal protection of the laws and equal educational opportunity to black students and black faculty and staff in the elementary schools in Ferndale in violation of 20 U.S.C. § 1703(a), (b) and (d) and the Fourteenth Amendment to the Constitution of the United States.

The allegations relating to the State are paragraphs 12 through 14 which allege:

> 12. Since the initiation of administrative proceedings by HEW in 1969, the State defendants have known that the Ferndale elementary schools were being operated by the defendants local school authorities on a racially segregated and discriminatory basis.
>
> 13. The State defendants, notwithstanding their knowledge that the Ferndale elementary schools were

---

1. The State defendants are the State of Michigan, the State Board of Education, the Governor and the Superintendent of Public Instruction.

being operated by defendant local school authorities on a racially segregated and discriminatory basis, have nevertheless continued to aid and assist the perpetuation and maintenance of that racial segregation and discrimination through the provisions of state funds and other assistance, while failing and refusing to take any necessary or appropriate action to bring the operation of the Ferndale elementary schools into compliance with the Fourteenth Amendment to the United States Constitution.

14. The defendants continue to operate, permit, aid, and assist the operation of the elementary schools in the defendant school district on a racially segregated and discriminatory basis.

The language of paragraph 13 of the amended complaint and the arguments of counsel for the United States at the hearing on August 18, 1975, imply that perhaps the United States is not claiming that State defendants have violated the EEOA.

As paragraph 18 indicates, the complaint relies on three of the violation provisions of 20 U.S.C. § 1703:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—
>
> (a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools;
>
> (b) the failure of an educational agency which has formerly practiced such deliberate segregation to take affirmative steps, consistent with subpart 4 of this title, to remove the vestiges of a dual school system;
>
> .    .    .    .    .    .
>
> (d) discrimination by an educational agency on the basis of race, color, or national origin in the employment, employment conditions, or assignment to schools of its faculty or staff, except to fullfill the purposes of subsection (f) below;
>
> .    .    .    .    .    .

The amended complaint's allegations with regard to the acts of the State defendants would not constitute a violation of subsections (a) or (d). Neither would the alleged failure to act violate subsection (b), since the State defendants were not the "educational agency which has formerly practiced such deliberate segregation."

■ The United States argues, however, that the wording of section 1703, "No State shall deny equal educational opportunity to an individual on account of his or her race . . ." places the State in violation of the Act and therefore makes it an appropriate party-defendant. The use of "State" in the statute, however, merely imposes a "state action" requirement in the same manner as does the similar wording of the Fourteenth Amendment. Certainly the State is not a proper defendant in each case of denial of Fourteenth Amendment rights.

In addition, the United States argues that the language of 20 U.S.C. § 1706, which authorizes suits by individuals and the Attorney General, makes it proper to sue the State in this action. Section 1706 provides:

> An individual denied an equal educational opportunity, as defined by this part may institute a civil action in an appropriate district court of the United States against such parties, and for such relief, as may be appropriate. The Attorney General of the United States (hereinafter in this title referred to as the "Attorney General"), for or in the name of the United States, may also institute such a civil action on behalf of such an individual.

■ The Court is of the opinion that the language, "such parties . . . as may be appropriate" refers to those parties who have denied individuals the right to equal educational opportunity. This statute does not, like Title IV of the Civil Rights Act of 1964 contain the

additional language which permits the Attorney General to "implead as defendants such additional parties as are or become necessary to the grant of effective relief hereunder." 42 U.S.C. § 2000c–6.

■ Even if the State's general powers over education were sufficient to make it an educational agency which may be charged as a party to the denial of equal educational opportunity to the elementary students in the Ferndale schools, the statutory prerequisites for the bringing of a suit by the Attorney General against the State defendants do not appear to have been met. Section 1710 provides:

> The Attorney General shall not institute a civil action under section [1706] before he—
>
> (a) gives to the appropriate educational agency notice of the condition or conditions which, in his judgment, constitute a violation of subpart 2 of this part; and
>
> (b) certifies to the appropriate district court of the United States that he is satisfied that such educational agency has not, within a reasonable time after such notice, undertaken appropriate remedial action.

The certificate of the Attorney General that is attached to the amended complaint indicates that the local school authorities, but not the State defendants, had been notified. If the State is an appropriate party-defendant then it is an appropriate educational agency to be notified under Section 1710 of its alleged discriminatory actions to promote the objective of expeditiously eliminating denials of equal educational opportunity without resort to the courts.

Thus the United States cannot, in this action, charge violations of the Equal Educational Opportunity Act against the State defendants.

The State defendants' motion also asserts that the Attorney General lacks standing to raise Fourteenth Amendment rights of the elementary school students without statutory authorization. At the hearings on defendants' previous motions to dismiss, the United States argued that the Attorney General had such standing. The Court ruled adversely to that position in its July 3, 1975 opinion and order. Despite this ruling, the amended complaint contains many allegations of violations of Fourteenth Amendment rights by the defendants.[2] The Court does not intend to repeat the analysis that lead it to conclude that without statutory authorization the Attorney General does not have standing to assert the Fourteenth Amendment rights of others. That analysis is set out in the Court's opinion and order of July 3, 1975, 400 F.Supp. 1122.

However, the United States makes one additional argument that it apparently believes gives it the right to raise the Fourteenth Amendment claims. A footnote in the United States' brief in support of its motion for Summary Judgment and a Preliminary Injunction urges the proposition that the Attorney General can assert the Fourteenth Amendment rights of others: "Since the United States is properly before the Court under 20 U.S.C. § 1706, it has standing to assert the Fourteenth Amendment rights that statute was enacted to protect." Brief at 34–35, footnote 41.

The inclusion of these allegations on this basis constitutes an exercise of needless caution, since the United States' position was adequately preserved. These allegations complicate the Court's task in ruling on the sufficiency of the amended complaint and plaintiff's motion for Summary Judgment and Preliminary Injunction.

---

2. There is an indication in plaintiff's brief in support of its motion for Summary Judgment and a Preliminary Injunction that these allegations are included "in order to preserve the government's claim that the United States can seek relief in this case for denials of Fourteenth Amendment rights to the persons on whose behalf the suit is brought." Brief at 5, footnote 6.

However, neither the cases cited by the United States nor the wording or legislative history of the EEOA support this proposition.

The United States relies on the concurring opinion of Mr. Justice White in *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). However, that opinion (and the holding of the Court) sustained the right of tenants in housing developments to allege discrimination against other persons on the explicit basis that the suit was brought under a "statute purporting to give all those who are authorized to complain to the agency the right also to sue in court." The question here is whether the EEOA is such a statute. Moreover, this is not a situation like that in the other case relied upon by the United States, *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), in which there may otherwise be no effective vehicle for those whose Fourteenth Amendment rights are violated to seek a judicial remedy. The EEOA and other federal statutes give such individuals the right to sue, and under the Civil Rights Act of 1964, neither financial burdens nor fear of community reprisals need deter such individuals from pursuing these remedies. See 42 U.S.C. § 2000c–6.

■ In addition, the Supreme Court has recently emphasized that standing is to be analyzed in terms of particular issues. See *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The fact that the Attorney General may be able to bring an action under the statute, does not give him standing to assert claims other than those which the statute authorizes.

It is clear from the statute's language that the standing granted to the Attorney General is limited. He may sue only to rectify denials of equal educational opportunity. The statute makes certain of its provisions applicable to denials of both equal educational opportunity and equal protection of the laws. See 20 U.S.C. §§ 1704, 1705, 1712, 1713. However, the provision permitting the Attorney General to sue grants standing only when there has been a denial of equal educational opportunity. 20 U.S.C. § 1706.

■ The United States argues that the rights guaranteed by the EEOA and the Fourteenth Amendment are coextensive, relying on 20 U.S.C. 1702(b): "the provisions of this title are not intended to modify or diminish the authority of the courts of the United States to enforce fully the fifth and fourteenth amendments to the Constitution of the United States." In addition, the United States also cites legislative history indicating the same conclusion. See Brief in Support of Motion for Summary Judgment and Preliminary Injunction, at 27. However, it is a *non sequitur* to say that because a statute does not purport to reduce the power of the courts under other laws that the statute encompasses all of that law.[3]

3. The Court is of the opinion that the legislative history indicates a distinction between the guarantees of the Fourteenth Amendment and the provisions of this Act.

As the Court noted in its opinion and order of July 3, 1975, there is little legislative history of the EEOA because it was offered from the floor of each house as an amendment to the Education Amendments of 1974. Therefore, there are no committee hearings or reports on the measure during that session. However, the amendments proposed on the floor were essentially the same as the comparable provisions of the proposed Equal Educational Opportunity Act of 1972,

H.R. 13915, 92d Cong., which passed the House but not the Senate in 1972.

There were hearings, committee reports and debates on that measure during 1972. The Court believes, as the United States argued in response to the defendants' first motions to dismiss, that it is appropriate to consider the legislative history of H.R. 13915 in interpreting the 1974 Act.

The 1972 bill was an administration proposal. Secretary of Health, Education and Welfare Richardson's explanation explicitly contemplated that individuals could challenge as discriminatory, school district actions that were not proscribed by the Act.

Thus, an individual, whose standing derives from his injury from the wrongs of the defendants could join a claim under the EEOA with Fourteenth Amendment claims. However, the Attorney General, who acquires his standing by virtue of the express authorization of 20 U.S.C. § 1706, acquires only standing to allege denials of equal educational opportunity as proscribed by the Act. Accordingly, the State defendants' Motion to Dismiss Count I, as to them, is granted.

 The Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

See also, D.C., 400 F.Supp. 1122, D.C., 400 F.Supp. 1131, and D.C., 400 F.Supp. 1135.

Secretary Richardson was asked by Congressman O'Hara during the House Education and Labor committee hearings whether, even if a school system was not in violation of the equal educational opportunity provision of that bill—which are essentially those that were enacted in 1974—whether "it would still be possible for courts to find that such a neighborhood school system did constitute a denial of equal protection and to enter orders of the sort described . . . ?" Secretary Richardson responded in the affirmative. Hearings before the House Educ. & Labor Comm. on H.R. 13915, 92d Cong.2d Sess., at 164.